The **FEDERAL LAND BANK OF ST. LOUIS, Plaintiff,**

v.

Robert W. **McGINNIS, Ramona J. McGinnis, the Citizens Bank of Batesville, Rex A. Davis and Mary G. Davis, Defendants.**

No. B–C–87–115.

United States District Court,
E.D. Arkansas, E.D.

April 25, 1989.

William A. Waddell, Jr., Friday, Eldridge & Clark, Little Rock, Ark., for plaintiff.

Lindsey Fairley, West Memphis, Ark., for Robert W. McGinnis and Ramona J. McGinnis.

A. Wayne Davis, Little Rock, Ark., for Rex A. Davis and Mary G. Davis.

## MEMORANDUM OPINION

ROY, District Judge.

Trial was held in this matter and post-trial briefs and findings have been received. The Court makes the following findings of facts and conclusions of law, and directs the Clerk to file the post-trial briefs and findings so that they may be made a part of the official record.

This is a foreclosure action by the Federal Land Bank of St. Louis (FLB). On March 30, 1982, the McGinnises executed a promissory note (the Note) to FLB in the principal amount of $275,000.00, bearing interest at the initial rate of 12¾% per annum. Contemporaneously with the execution of the note and for the purpose of securing payment of the note, the McGinnises executed, acknowledged and delivered to FLB a mortgage which conveyed certain property lying in Independence County, Arkansas.

On July 2, 1982 the McGinnises conveyed the subject property to Rex A. and Mary G. Davis. A mortgage on the subject property was filed by The Citizens Bank of Batesville on July 2, 1982. Citizens Bank agrees that its lien is inferior.

The plaintiff contends that the McGinnises are in default, and seeks judgment against them and foreclosure of the mortgage. In their answer, the McGinnises, by way of affirmative defense, state that plaintiff entered into a forbearance agreement with defendants for the transfer to plaintiff of defendants' interest in Federal Land Bank stock and a vendor's lien on plaintiff's security in consideration of forbearance from any action against defendants including suit, foreclosure or other collection efforts. Defendants also state that plaintiff is estopped to attempt to collect the indebtedness from defendants as plaintiff accepted payments from defendants Davis, extended the payment schedule with defendants Davis over the defendant McGinnises' objection and generally treated defendants Davis as borrowers on plaintiff's indebtedness.

The McGinnises cross-complained against Rex A. and Mary G. Davis and Citizens Bank of Batesville, seeking foreclosure of a vendor's lien and judgment against Rex A. and Mary G. Davis for any amounts awarded plaintiff against the McGinnises. The McGinnises contend that they conveyed the property to the Davises and retained a vendor's lien, and that the failure of the Davises to pay the amount owed FLB constitutes a breach of the agreement. Therefore, they contend they are entitled to foreclosure of the vendor's lien and indemnification and judgment against the Davises. In their answer, the Davises basically deny the allegations of the complaint.

There is no issue in this case as to the execution of the note and mortgage in favor of FLB. Nor is it disputed that the amount owed on the note as of January 9, 1989 was $370,896.55 with interest thereon at the rate of $117.55 per diem. It is not disputed that the note and mortgage to FLB are in default and that FLB has a first lien against the real property at issue in this action. The only issues before the Court are these affirmative defenses raised by the defendants:

1. Whether FLB is estopped from foreclosing against the McGinnises by virtue of an alleged forbearance agreement entered into between FLB and the McGinnises;

2. Whether FLB is estopped from collecting the indebtedness owed by the McGinnises because it allegedly accepted payments from the separate defendants, Rex A. and Mary Davis, extended the payment schedule with the Davises over the objection of the McGinnises, and because it generally treated the Davises as borrowers on the indebtedness owed to FLB;

3. Whether FLB is estopped from foreclosing against the McGinnises because it received a forbearance application from the McGinnises in 1987 and allegedly failed to respond to the application;

4. Whether the Davises are borrowers within the meaning of the Agricultural Act of 1987 so that FLB is estopped from bringing this action by virtue of an application for restruc-

turing that was submitted to FLB by the Davises in August of 1988; and

5. Whether FLB is estopped from foreclosing against the Davises because the Davises and the McGinnises submitted a joint application for restructuring on January 6, 1989, three days prior to the trial of this case.

Plaintiff first asks the Court to strike the last three affirmative defenses as being untimely and because they were never properly before the Court. Plaintiff contends that the first two defenses were the only ones ever raised by the McGinnises in any pleading, that the last three were raised for the first time in the Davises pre-trial conference information sheet, and that no one moved to allow their pleadings to conform to the evidence. The plaintiffs do state, however, that they were aware of these defenses, and all of the issues were fully tried to the Court, with the Court reserving ruling on plaintiff's objections. Technically, the plaintiff's legal assertions are correct. However, the plaintiff was able to fully and completely address each affirmative defense, and the Court finds that it is more judicially expedient to reach the merits of the affirmative defenses raised. Had the plaintiff been prejudiced, the Court would hold otherwise. Since no prejudice has been shown, the Court will reach the merits of the defenses raised.

■ In their post-trial memorandum brief, the McGinnises argue for the first time that FLB is legally barred from pursuing the McGinnises pursuant to Ark.Code Ann. § 4–3–606(1)(a). This defense is obviously very untimely and should not even be considered. However, even if the argument were considered, it would nevertheless fail, since several cases have found that this defense is not available to makers of a note such as the McGinnises. *See United States v. Vahlco Corp.*, 720 F.2d 885 (5th Cir.1983), later appeal, 800 F.2d 462 (1986); *United States v. Unum, Inc.*, 658 F.2d 300 (5th Cir.1981); *Utah Farm Production Credit Assn. v. Watts*, 737 P.2d 154 (Utah 1987).

## I. WHETHER FLB IS ESTOPPED FROM FORECLOSING AGAINST THE McGINNISES BY VIRTUE OF AN ALLEGED FORBEARANCE AGREEMENT ENTERED INTO BETWEEN FLB AND THE McGINNISES.

■ The forbearance application dated April 21, 1987 was entered as an exhibit. The only signature on the application was that of Robert W. McGinnis. In the application, Mr. McGinnis states that he is willing to convey voluntarily to FLB any right, title, or interest he may have in the property, including release of a vendor's lien of record, for satisfaction of the debt.

The Court is persuaded by the plaintiff's arguments. In essence, the McGinnises are arguing that FLB and the McGinnises modified the terms of the note and mortgage and that FLB is now estopped to bring this action. They produced a document entitled "Assignment" but it was not signed by FLB and did not set forth an agreement between FLB and them. Thus, the Court must infer that the modification was oral.

In order to meet their burden of proof on the issue of an oral modification, the McGinnises must prove the modification "with clear, unequivocal, and decisive evidence...." *Amerdyne Industries, Inc. v. POM, Inc.*, 760 F.2d 875, 877 (8th Cir.1985). Robert McGinnis testified that he reached an agreement with Marvin Clause concerning forbearance by FLB on the debt. However, he also testified that nothing was reduced to writing.

Mr. Kenneth Farrow, an employee of Farm Credit Services since 1976, testified that he told Mr. McGinnis that he had a legal opinion telling FLB that they could not proceed with the forbearance application. In a letter dated October 23, 1987, Mr. Farrow attached a copy of the legal opinion from attorney Marvin Thaxton, wherein Mr. Thaxton states that it appears to him that the only real practical solution is for FLB to institute foreclosure proceedings, noting the McGinnis' vendor's lien and the lien of Citizens Bank of Batesville.

Ken Farrow and Sam Jones, both employees of FLB who have had responsibility

for the loan, testified that they had reviewed the loan file and found no evidence of any agreement as alleged by the McGinnises. On April 30, 1987, after the forbearance application was filed, Marvin Clause of FLB sent the McGinnises an acceleration and demand letter. Furthermore, after lengthy negotiations with the McGinnises, Marvin Clause wrote a letter dated July 13, 1987 to McGinnis stating, "I am sure you can see what we must do to protect our position, as the Citizen [sic] Bank is in the picture now."

When viewed in context, the documents referred to above clearly demonstrate that the McGinnises have failed to prove with clear, unequivocal, and decisive evidence that there was an agreement with the McGinnises which operated to modify the note and mortgage upon which FLB is now suing.

## II. WHETHER FLB IS ESTOPPED TO BRING THIS ACTION AGAINST THE McGINNISES BY VIRTUE OF ITS DEALINGS WITH THE DAVISES.

■ It is not disputed that FLB accepted payments from the Davises. However, the record is clear that at all times, FLB made it clear to both the Davises and the McGinnises that the McGinnises were the borrowers of FLB and the dealings with the Davises were simply a courtesy to them since they were the owners of the real property securing the loan.

Ron Carter, who handled the loan, testified that he never told the McGinnises they were absolved from liability on the note. He said he told them just the opposite and that when he talked to the Davises, he told them the McGinnises were still liable. Even Robert McGinnis testified that no one with FLB told him they allowed the loan to be assumed, and that he was aware he had not been released.

Furthermore, in a memo written by Terry Vest, Mr. Vest noted that Mr. McGinnis said that he desired to continue to make the payment and not transfer the loan to Mr. Davis. He stated that Mr. McGinnis "strongly emphasized the point that he wished to keep his relationship with the FLB in good standing."

Rex Davis testified that he thought he assumed the loan, but no such agreement between Davis and FLB was presented to the Court. Mr. McGinnis testified that he told Ron Carter that he did not want any more time to be extended on the payments. However, this is inconsistent with the forbearance application filed April 21, 1987, and the McGinnises' attempts to work something out with Marvin Clause after he allegedly made the objection to Ron Carter and his later application for restructuring in 1989.

## III. WHETHER FLB IS ESTOPPED FROM FORECLOSING BECAUSE IT RECEIVED A FORBEARANCE APPLICATION FROM THE McGINNISES IN 1987 AND ALLEGEDLY FAILED TO RESPOND.

■ FLB denies that the forbearance application referred to previously was complete, and further denies that it did not respond to the application. As stated earlier, the application was signed only by Robert W. McGinnis. The Forbearance Policy of the Sixth Farm Credit District provided that an application for forbearance under that policy meant "a written request by a borrower for forbearance submitted on the appropriate forms prescribed by the institution and accompanied by sufficient financial information and repayment projections as required by the institution to support a sound credit decision." The application also indicates "all parties liable for and all of the present owners of the property securing the above loan(s)" have applied for the forbearance.

The forbearance application in the present case was deficient for two reasons: (1) it was not signed by all of the appropriate persons, and (2) it was not accompanied by any financial information.

Furthermore, as stated by the defendants, the application was not a request for forbearance. The types of forbearance available under the policy "include the deferral or rescheduling of the payment of principal or interest, the renewal or extension of the terms of a loan, a reduction in the amount or rate of principal or interest

due on a loan and other similar actions." In the application, under #5, where applicant is requested to state plan for correcting delinquency, Mr. McGinnis stated that "I am willing to convey voluntarily to Federal Land Bank any right, title or interest I may have in the property, including release of a vendor's lien of record, for satisfaction of debt." This is simply an offer of settlement. Where the application asks the applicant to describe forbearance action requested, Mr. McGinnis filled in the blank by stating "N/A—Refer to #5 (including voluntary conveyance of Federal Land Bank stock)." The offer did not offer anything which FLB did not already have. The FLB already had a first lien on the real property and already had a lien on the stock in FLB (see 12 U.S.C. § 2054) and could retire it once the loan was in default.

With respect to the response to the application, although a form denial was not sent, the letter from Ken Farrow which was sent to McGinnis, with a copy of Marvin Thaxton's letter attached thereto, was sufficient notice of denial. Although it would be better practice to send a form denial in each instance of denial, the Court cannot say that McGinnis was not on notice that the forbearance application was denied.

Finally, even if the Court were to find that the written notice by FLB was insufficient, that does not mean that FLB could not commence foreclosure proceedings against the McGinnises. First, any possible defect in FLB's handling of the forbearance application was cured by FLB's sending another application and the forbearance policy in September of 1987 which notified the McGinnises of a right to review any decision by FLB on the application. Any possible defect was also cured by the opportunity given to the McGinnises to submit an application for restructuring in May of 1988. Second, Sidney Paul Smith testified that the policy in effect in 1987 had been much less stringent than the policy promulgated pursuant to the Agricultural Credit Act of 1987 (12 U.S.C. § 2001, et seq.) which went into effect on January 6, 1988. The Agricultural Credit Act of 1987 was passed, in part, to prevent FLB from proceeding with foreclosure unless it complied with the new act after receiving a timely application. See 12 U.S.C. § 2202a.

## IV. WHETHER FLB IS ESTOPPED FROM BRINGING THIS ACTION BY VIRTUE OF ITS RECEIPT OF RESTRUCTURING APPLICATIONS FROM THE DEFENDANTS ON AUGUST 10, 1988 AND JANUARY 6, 1989.

■ On May 24, 1988, Eugene Knop, Regional Vice President of Farm Credit Banks of St. Louis, wrote the McGinnises advising them of the possibility of restructuring their loan pursuant to the Agricultural Credit Act of 1987. A copy of the restructuring policy and the necessary materials were sent in the event the McGinnises wanted to apply for restructuring. The deadline for submitting the application was July 11, 1988. It was not until August 10, 1988, that FLB received an application from Sidney Paul Smith on behalf of the Davises. The application was not signed by the McGinnises. Sam Jones told Mr. Smith when the application was submitted that it would not be considered by FLB because the Davises were not borrowers of FLB.

■ On January 6, 1989, the last working day before the trial in this case, the McGinnises and the Davises submitted the same application for restructuring with the signatures of the McGinnises now appearing on the application. Obviously, according to the letter sent by Mr. Knop, the applications were untimely. FLB has authority to establish a deadline for submitting an application. 12 U.S.C. §§ 2202a(b)(1) and (2) provide that once a determination is made that a loan is "distressed," notice of possible restructuring of the loan must be given "not later than 45 days before any qualified lender begins foreclosure proceedings ...". The statute implies that FLB may proceed with foreclosure if the borrowers do not submit an application within the forty-five day period. This is consistent with the holding in *The Federal Land Bank of St. Louis v. Ralph D. Peifer,* No. 88–CH–6 (4th Judicial Circuit

958

Court, Montgomery County, Ill., June 20, 1988) (a copy of which is attached hereto).

Further support for this holding is found in the fact that the first application was signed only by the Davises. As stated by the plaintiff, the Agricultural Credit Act of 1987 applies only to "borrowers" as that term is used in the Act. 12 C.F.R. §§ 614.-4516 and 614.4518 refers to borrowers as "primary obligors." The Davises are not borrowers of FLB or primary obligors on any note to FLB. No transfer of the loan to the Davises was ever approved by FLB. In fact, no FLB transfer form was ever executed. Therefore, FLB was not required to consider the applications for restructuring which were submitted in August of 1988 and January 6, 1989.

■ As referred to above, Rex A. Davis and Mary G. Davis have a fee simple interest in the real property given as security for payments of the note to FLB by reason of a warranty deed from the McGinnises which was filed of record in Independence County, Arkansas on July 2, 1982. The interest of Rex A. Davis and Mary G. Davis in the real property, crops, or other property is subordinate and inferior to the lien of FLB's mortgage. As part of the consideration for the conveyance to Davis a vendor's lien was retained by McGinnis to secure payment by Davis of all sums owing to FLB. The vendor's lien is a valid second lien on the real estate and secures all amounts due FLB by McGinnis.

■ The Citizens Bank of Batesville has a valid third lien against the real property given as security for the payment of the note to FLB by reason of a mortgage which was filed of record. The interest of the Citizens Bank of Batesville in the real property described in the mortgage executed in favor of FLB is subordinate and inferior to the lien of FLB's mortgage and the vendor's lien of McGinnis.

Based upon the foregoing, the Court finds that the affirmative defenses raised by the defendants should be overruled and judgment should be entered in favor of FLB. Judgment should also be entered in favor of the McGinnises on their cross-claim against the Davises. Plaintiff is di-

rected to prepare the judgment in accordance with this Order and submit it to the Court by no later than May 1, 1989.

ORDERED.

EXHIBIT A

In The Circuit Court Of The Fourth Judicial Circuit

Montgomery County, Illinois

The Federal Land Bank Of St. Louis, a federally chartered corporation, Plaintiff,

v.

Ralph D. Peifer, Margaret Ann Peifer and David T. Hadley, Defendants.

No. 88–CH–6

ORDER

Now this cause coming on to be heard the 6th day of June, 1988 upon plaintiff's application to be placed in possession of the premises contained in its verified Complaint and the Motion to Dismiss or in the Alternative to Stay Proceedings and objection to said application filed herein by defendants, Ralph D. Peifer and Margaret Ann Peifer; and plaintiff appearing by its representative and its attorney, Jeffrey D. Richardson, and the defendants, Ralph D. Peifer and Margaret Ann Peifer, appearing by their counsel, Michael R. Glenn, and the defendant, David T. Hadley, appearing by his counsel, John T. Bullington; and the Court having heard and considered the evidence herein and the arguments of counsel FINDS that:

A. The "Agricultural Credit Act of 1987" does not require regulations for enforcement. The Act provides under Section 4.14(Ag) that a restructuring policy must be developed. The application for restructuring (Plaintiff's Exhibit No. 7) sets forth that one has been adopted. Therefore, the matter is not stayed.

B. The Act taken as a whole implies that it is to allow all farmers a chance to restructure their loan to save their land. The Act requires certain financial informa-

tion and a request for restructuring to allow the borrower to become financially viable. The request made here is for the lender to forgive the loan in exchange for a deed to the entire premises. That is not what is intended by the Act.

C. The Court further finds that the 45 day limit in the bank' policy is not unreasonable in light of Section 4.14A(b)(2) requiring the notice to be given not less than 45 days before foreclosure.

D. The Court finds that the notes presented are in default and that the plaintiff will in all probability prevail on the underlying Complaint.

IT IS THEREFORE ORDERED AND ADJUDGED that the mortgagee, the Federal Land Bank of St. Louis, a federally chartered corporation, is hereby placed in possession of the premises with the rights, powers and duties of a mortgagee in possession provided by statute.

DATED: 6-20-88

ENTER:

/s/ David W. Slater
JUDGE