PRODUCTION CREDIT ASSOCIATION OF GRAFTON, Plaintiff and Appellee,

v.

John V. DAVIDSON a/k/a John Davidson and Catherine Davidson, husband and wife, Defendants and Appellants.

Civ. No. 11332.

Supreme Court of North Dakota.

July 17, 1989.

John V. Davidson, (argued) Edinburg, for defendants and appellants, pro se.

Pearson, Christensen & Fischer, Grand Forks, for plaintiff and appellee; argued by Douglas A. Christensen.

ERICKSTAD, Chief Justice.

John and Catherine Davidson appeal from a money judgment granting the Production Credit Association of Grafton $80,-134.12 plus costs and disbursements. We affirm in part, reverse in part, and remand.

█ The fact that the Davidsons have been acting pro se throughout the majority of these proceedings and have filed several bankruptcy petitions contemporaneous with this civil action [1] has complicated the procedural aspects of this case. We will not modify or apply our rules and statutes differently merely because a party not learned in the law is acting pro se. *See Lang v. Bank of North Dakota*, 377 N.W.2d 575, 580 n. 6 (N.D.1985). We will,

however, set forth the sequence of procedural events in detail so as to add perspective to the issues on appeal.

On June 10, 1985, PCA commenced this action by personally serving John and Catherine Davidson with a summons and complaint. The complaint alleged that on or about May 29, 1981, the Davidsons entered into a Basic Loan Agreement under which the PCA was named as Lender and the Davidsons were named as Borrower. PCA contended that, pursuant to their Lender/Borrower relationship, further loans were made to the Davidsons as follows: on March 14, 1984, PCA loaned the Davidsons money pursuant to a Supplementary Loan Agreement, under which the Davidsons agreed to remit to PCA 100% of all proceeds obtained from the sale of crops and also to repay PCA the sum of $25,-485.99 on or before November 1, 1984; pursuant to another Supplementary Loan Agreement dated October 1, 1984, PCA advanced to the Davidsons the sum of $69,-830.38 to be repaid according to the terms of the March 14, 1984, agreement; and, on January 11, 1985, PCA loaned the Davidsons $1,000.00 to be repaid by May 1, 1985.

In addition to the Basic Loan Agreement and the Supplementary Loan Agreements, the complaint alleged that PCA and the Davidsons entered into two security agreements. A security agreement dated May 29, 1980, gave PCA a security interest in all the Davidsons' farm equipment then owned or thereafter acquired, all accessions thereto, spare and repair parts and special tools and equipment. A security agreement, dated May 20, 1983, gave PCA a security interest in all crops growing or to be grown, the products of all crops, the proceeds derived, and all accounts arising from the sale of said crops grown on real estate located in Pembina County and described in the agreement. PCA perfected its security interest by filing a financing statement on May 23, 1983.

---

1. According to the brief filed by PCA, the Davidsons filed a Chapter 11 bankruptcy petition on July 7, 1985, that was dismissed May 20, 1986. A Chapter 12 petition was filed December 2, 1986, and dismissed April 24, 1987. Davidsons then filed a Chapter 7 bankruptcy petition on May 18, 1987. An order for judgment and a judgment were entered April 12, 1989, in conjunction with that Chapter 7 petition.

The complaint further alleged that the Davidsons had sold some grain, and had in their possession a check in the amount of $21,728.00, made payable to the Davidsons and PCA, for the sale of sunflowers, and furthermore, that the Davidsons had cashed a check in the amount of $1,474.00 received from the sale of 1984 sunflowers, made payable to PCA and the Davidsons, without obtaining the endorsement of PCA. The complaint alleged that, although PCA had demanded that the Davidsons remit to PCA the money they received from the sale of 1984 sunflowers as payment toward their indebtedness, payment had not been received.

In addition to filing the summons and complaint, PCA filed an ex parte motion with the trial court for an order to show cause in a claim and delivery proceeding. The motion was granted and the Davidsons were ordered to show cause before the trial court on June 24, 1985, why they should not be required to assemble the secured collateral and make it available to PCA and permit PCA to repossess it, and also to endorse and deliver the checks to PCA. A copy of the ex parte motion and the order to show cause were personally served on the Davidsons on June 10, 1985, the same day they were served with the summons and complaint.

On June 18, 1985, John and Catherine Davidson each filed a motion to dismiss the complaint, an accompanying brief, and an affidavit entitled "Special Appearance." The Davidsons asserted that the complaint failed to state a claim upon which relief could be granted "due to the fact that they [PCA] are not organized under the laws of this state and the fact that Plaintiff does not have the certificate of authority neces-

sary to gain standing in a court of this state as a fictitious entity." [2]

On June 20, 1985, both John and Catherine Davidson filed a return to the order to show cause and an accompanying affidavit. The documents were again entitled "Special Appearance." The Davidsons asserted that PCA's "affidavit fails to state that the Plaintiff is the owner of the property or that the Plaintiff has a special property therein. The Defendant asserts that John V. Davidson is the owner of the property in question and that the Plaintiff has absolutely no ownership or special property therein."

On June 24, 1985, a hearing was held on PCA's motion for an order to show cause in conjunction with its claim and delivery motion. On June 28, 1985, the trial court ordered that, after being given a seven-day notice, the Davidsons must assemble all of the items of farm machinery and equipment in which PCA had a security interest and make them available to the sheriff who could then seize and deliver the collateral to PCA to sell. The trial court further ordered that the Davidsons endorse and deliver to PCA all checks they had received from the sale of their 1984 crop. The Davidsons were warned that failure to assemble the property or cooperate with the sheriff might subject them to contempt proceedings.[3]

On July 9, 1985, the Davidsons filed a counterclaim against PCA alleging fraud, breach of fiduciary trust, racketeering, and contempt of Congress. PCA filed a reply to the counterclaim on July 29, 1985, alleging that the counterclaim failed to state a claim upon which relief could be granted and further asserting that the allegations

---

**2.** On June 28, 1985, the trial court issued an order denying the Davidsons' motion to dismiss PCA's complaint saying that the "Court feels that the same is without merit for the PCA is a federal instrumentality and not required to obtain a certificate of corporate authority to do business in the State of North Dakota." *See Federal Land Bank of St. Paul v. Gefroh,* 390 N.W.2d 46 (N.D.1986).

**3.** The order dated June 28, 1985, was not served on the Davidsons because they had filed a Chap-

ter 11 bankruptcy petition. On May 14, 1986, PCA sent the Davidsons a copy of that order along with a letter advising them that the sheriff would be at their farm May 22, 1986, to collect the equipment and the check. When the sheriff arrived, John Davidson refused to let him on the property and refused to produce the check. PCA then filed an application for an order to show cause why Davidson should not be held in contempt for failure to comply with the provisions of the June 28, 1985, order.

contained in the counterclaim were frivolous and not made in good faith.

On May 30, 1986, the trial court ordered John Davidson to appear on June 9 to show cause why he should not be held in civil contempt of the court's order dated June 28, 1985, for failure to cooperate with the sheriff and comply with the terms of the order. Davidson was personally served with a copy of the order to show cause on June 6, 1986. Apparently, the hearing was held and the court again ordered Davidson to cooperate with the sheriff.[4] Davidson did not do so, and on July 21, 1986, the court ordered both John and Catherine Davidson to appear on August 6, 1986, to show cause why they should not be held in civil contempt.

PCA filed a motion for default judgment under Rule 55 or, in the alternative, summary judgment. A copy of this motion, a brief and affidavit in support of the motion, and a notice of the hearing on the motion scheduled for August 6, 1986, were mailed to the Davidsons on July 18, 1986. The record contains no response from the Davidsons to the motion for summary judgment.

Also on July 18, 1986, PCA moved that the trial court issue an order directing the First American Bank & Trust Company of Grafton to turn over to the PCA money in the Davidsons' account which had been derived from the sale of the 1984 sunflowers. A copy of this motion, the accompanying brief, and notice of hearing set for August 6, 1986, were also mailed to the Davidsons on July 18, 1986. In the notice of hearing, PCA advised the Davidsons that the motion was submitted pursuant to Rule 3.2 of the North Dakota Rules of Court and, accordingly, the adverse parties were directed to file a brief within ten days of the service of the motion upon them. The Davidsons

were further advised that failure to do so would be deemed an admission that the motion was meritorious.[5]

■ The hearing scheduled for August 6, 1986, on the order to show cause for civil contempt, the motion for default judgment and alternative summary judgment, and order directing the bank to turn over to PCA the proceeds from the sale of 1984 sunflowers, was apparently held but we are unable to review those proceedings because the Davidsons did not order a transcript of that hearing. "If an appeal is taken in a case in which an evidentiary hearing was held, it is the duty of the appellant to order a transcript of the proceedings." Rule 10(b), N.D.R.App.P.

On August 8, 1986, the trial court issued an order finding John Davidson in contempt of court for failing to obey the previous court orders directing him to turn over his property and sentenced him to thirty days in jail or until such time as he purged himself of contempt by disclosing the location of the property. In oral argument, John Davidson indicated that he did spend some time in jail.

On August 18, 1986, the trial court granted PCA's motion for default judgment and alternative motion for summary judgment and directed entry of judgment against the Davidsons.

On August 19, 1986, PCA moved that the trial court direct the Edinburgh Farmers Elevator to issue a check payable to PCA in the sum of $21,728.47 owed by the elevator to John Davidson by virtue of the elevator's purchase of sunflowers from Davidson's 1984 crop. A copy of that motion and accompanying brief and affidavit were mailed to the Davidsons on August 19, 1986.[6]

---

4. No such order is found in the certified record in this case, although in the order to show cause dated July 21, 1986, the trial court refers to its "Order dated June 17th 1986."

5. On August 25, 1986, John Davidson filed an unsworn judicial notice informing the trial court that he had not been served with the "Notice of Hearing of Motion for Order Directing First American Bank & Trust Company To Turn Over Funds to PCA and for Other Relief"

dated July 18, 1986. He also objected to any action being taken under Rule 3.2, N.D.R.O.C.

On August 29, 1986, the Davidsons filed a motion for an order denying release of funds to PCA and a brief in support of that motion.

6. On August 20, 1986, John Davidson was personally served with an order directing him to appear September 2, 1986, regarding the balance of his previous contempt sentence.

On August 20, 1986, judgment was entered in accordance with the order of August 18, 1986. A notice of entry of judgment and a copy of the judgment were mailed to the Davidsons on August 21, 1986. The Davidsons filed a notice of appeal on August 29, 1986.

The Notice of Appeal reads in pertinent part:

"PLEASE TAKE NOTICE that Defendant John V. Davidson and Catherine Davidson appeal to the Supreme Court of the State of North Dakota from an Order of District Court Judge via its Clerk of Court, Bernice Bernhoft and Judgment dated August 20, 1986."

▌ PCA contends that the Davidsons' appeal is from the judgment, and not from the order, and, therefore, the issues presented in their counterclaim are not before the Court on appeal. In the order granting PCA's motion for default judgment and alternative summary judgment and directing entry of judgment dated August 18, 1986, the district court ordered that:

"I.

"The PCA's Motion for a Default Judgment under Rule 55 is granted for the Court finds that the defendant John V. Davidson has failed to plead or otherwise appear as required under Rule 8(d) of the North Dakota Rules of Civil Procedure.

"II.

"Pursuant to Rule 11 of the North Dakota Rules of Civil Procedure the defendants Counterclaim is dismissed with prejudice for the Court concludes that said Counterclaim fails to state a cause of action upon which relief can be granted.

"III.

"The Court further concluded that *there are no genuine issues of material fact which exists between the parties which would preclude the Court from entering a summary judgment in the PCA's favor. This conclusion is based upon the fact that the defendant Davidson has failed to file any responsive affidavits in resistance to the PCA's motion for a summary judgment* or in its motion for a default judgment. It is further supported by the fact that the defendant has failed to set forth any type of responsive pleading or allegations which would give rise to a genuine issue of material fact which would result in preserving this matter for a trial upon its merits. [Emphasis added.]

"IV.

"The Court pursuant to Rule 54(b) of the North Dakota Rules of Civil Procedure does hereby make an expressed determination that there is no just reason for a delay and as such directs that the PCA shall be entitled to ... take judgment against the defendants for the relief set forth in its Complaint and as such it is hereby ordered that the PCA shall take judgment against the defendants John V. Davidson and Catherine Davidson jointly and severally in the principal sum of $63,419.84 plus accrued interest thereon through the 10th day of August, 1986 in the amount of $16,714.28 for a total due as of August 10th, 1986 of $80,134.11, and the PCA shall be entitled to its costs and disbursements incurred in this matter.

"V.

"It is further ordered that the bond filed by the PCA as part of its Claim and Delivery proceeding is discharged and the PCA and the surety are released and exonerated from such bond. This release and exoneration shall become effective 60 days from the date of the entry of judgment, unless prior to such time the defendants John V. Davidson and Catherine Davidson have filed Notice of Appeal at which time the bond shall remain in full force and effect until further order of the Court."

The judgment entered two days later, on August 20, 1986, ordered:

"1. That the PCA take a judgment against the defendants John V. Davidson and Catherine Davidson jointly and severally for the principal sum of $63,419.84 plus accrued interest through August 10th, 1986 of $16,714.28 for a total judgment of $80,134.12.

"2. Further that the PCA shall be entitled to its costs and disbursements incurred herein in the amount of $1,317.00.

"3. That the bond filed by the PCA as part of the Claim and Delivery proceeding is discharged and the PCA and its surety are released and exonerated from such bond which releases shall become effective sixty (60) days from the date of entry of this judgment, unless prior to such time the defendants have filed a Notice of Appeal at which time the bond shall remain in full force and effect until further order of the Court."

Although the judgment does not mention the Davidsons' counterclaim, wherein they requested money damages and other relief, it affords relief only to PCA. The order directing entry of judgment also grants both the motion for default judgment and the motion for summary judgment. The peculiarity of the judgment in light of the order cannot be attributed to the Davidsons, but must be charged to PCA whose counsel likely prepared the judgment for the Clerk of Court's signature. Holding the party responsible who likely prepared the judgment, we construe the judgment as in compliance with the order which results in bringing both the money judgment and

issues of the counterclaim before this Court.[7]

PCA brought the motion for default judgment pursuant to Rule 55 of the North Dakota Rules of Civil Procedure. Rule 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise appear and the fact is made to appear by affidavit or otherwise, the court may direct the clerk to enter an appropriate judgment by default in favor of the plaintiff and against the defendant...."

The Davidsons were served with a summons and complaint on June 10, 1985. A counterclaim was mailed to PCA on July 5, 1985, and filed with the trial court July 9, 1985. Rule 12(a), N.D.R.Civ.P., requires that a defendant serve his answer within 20 days after the service of the summons upon him, or within 10 days after notice of the court's action on a permitted motion to dismiss, unless a different time is fixed by order of the court.

The Davidsons did not reply to the summons and complaint with papers designated "Answer" but rather replied with a "Counterclaim." Although the liberal interpretation of the rules of pleading applies with equal force to defenses asserted in an answer as it does to claims asserted in a complaint [*Daley By Daley v. American Family Mut. Ins.*, 355 N.W.2d 812, 815 (N.D.1984)], we do not need to determine whether or not the Davidsons' counterclaim complies as an answer because it does constitute an appearance.

7. We have concluded that the issues presented in the counterclaim are properly before this Court on appeal notwithstanding that counsel for PCA, in the brief in support of the motion for default judgment or alternative motion for summary judgment, requested that the trial court make a determination pursuant to Rule 54(b), N.D.R.Civ.P., "so that it can direct that there is no reason why a final judgment can not be entered in this matter as to the PCA reserving the matter of the defendants' counterclaim against the PCA for trial at a later time." It should be noted that the order of August 18, 1986, inexplicably dismisses the counterclaim in Paragraph II while it seems to grant a Rule 54(b) order in Paragraph IV.

PCA's motion requests that the court grant "an Order directing that a default judgment be en-

tered in the above entitled pursuant to Rule 55 of the North Dakota Rules of Civil Procedure." The district court then ordered that "[t]he PCA's Motion for a Default Judgment under Rule 55 is granted...." As neither the order nor the motion distinguishes between default judgment on the complaint from default judgment on the counterclaim, we have treated the order as granting PCA's motion for default judgment on both. It should be pointed out that the order could conceivably be construed to grant default judgment only on the complaint as theoretically it is not possible to grant a plaintiff's motion for default judgment on a counterclaim. We note that PCA's brief to this Court argues that the court granted both motions without excepting the issues of the counterclaim from the default judgment.

■ Pursuant to Rule 55(a)(3), N.D.R. Civ.P., "[i]f the party against whom judgment by default is sought has appeared in the action, he ... shall be served with written notice of the application for judgment at least 8 days prior to the hearing on such application." On July 18, 1986, PCA did send the Davidsons a notice of the hearing scheduled for August 6, 1986, at which PCA's motion for default judgment was to be considered, and the Davidsons did appear.[8] However, the motion for the default judgment, the affidavit, and brief supporting the motion did not address the issues raised by the Davidsons in the counterclaim. The counterclaim was timely filed and the Davidsons timely appeared in response to the motion for default judgment on the debt, therefore it was error for the trial court to order default judgment on the counterclaim. *See Federal Land Bank of St. Paul v. Lillehaugen*, 370 N.W.2d 517, 519 (N.D.1985); *see infra* footnote 7.

Along with the motion for default judgment, PCA included an alternative motion for summary judgment accompanied by a brief and supported by the affidavit of the credit officer of PCA. In the motion, PCA asserts that there are no genuine issues of material fact and, as a matter of law, PCA is entitled to a judgment.

■ Summary judgment is a procedural device available for the prompt disposition of controversies without the necessity of a trial when, viewing the evidence in the light most favorable to the opposing party and giving that party the benefit of all favorable inferences, there is no genuine dispute as to either the material facts or the inferences to be drawn from undisputed facts. *Ostlund Chemical Co. v. Norwest Bank*, 417 N.W.2d 833, 835 (N.D. 1988).

■ A party resisting a motion for summary judgment has the responsibility of presenting competent admissible evidence by affidavit or other comparable means, and, if appropriate, drawing the court's attention to evidence in the record by setting out the page and line in depositions or other comparable document containing testimony or evidence raising a material factual issue, or from which the court may draw an inference creating a material factual issue. *Federal Land Bank of Saint Paul v. Anderson*, 401 N.W.2d 709 (N.D.1987); *First National Bank of Hettinger v. Clark*, 332 N.W.2d 264, 267 (N.D.1983); Rule 56(e), N.D.R.Civ.P.

■ The motion for summary judgment, brief, and affidavit in support of the motion, address only the issue of the debt owed by the Davidsons to PCA. Our review of the record on appeal does not disclose that pertinent evidence was submitted to the lower court, by affidavit or otherwise, resisting the motion for summary judgment. This implicitly leaves the presumption that no such evidence exists. *First National Bank of Hettinger v. Clark, supra*, 332 N.W.2d at 268. We, therefore, sustain the trial court's grant of summary judgment as to the debt owed by the Davidsons to PCA.

■ Notwithstanding that conclusion, it appears it was inappropriate for the trial court to grant summary judgment or dismiss with regard to some of the issues raised by the Davidsons in the counterclaim. A review of the documents in the certified record reveals that the Davidsons mailed the counterclaim to PCA on July 5, 1985. PCA filed a reply to the counterclaim on July 29, 1985. PCA did not make a motion to dismiss the counterclaim pursuant to Rule 3.2 of the North Dakota Rules of Court. PCA did not refer to the issues raised in the counterclaim in its motion for summary judgment, the brief, or the affidavit. No trial was held on these issues raised by the Davidsons.

■ Our Rules of Civil Procedure merely require counterclaimants, the same as claimants, to allege facts that, if true, state a claim upon which relief could be granted. The rules do not require that counterclaimants prove their claims in advance of trial unless a movant for summary judgment

---

**8.** A transcript of the August 6, 1986, hearing is not included in the certified record, however, the trial court in its order indicates John Davidson appeared pro se.

has complied with Rule 56(e) of the North Dakota Rules of Civil Procedure as to the counterclaims.[9]

Of the four issues the Davidsons assert in their counterclaim, fraud, racketeering, breach of fiduciary duty, and contempt of Congress, we find the first two to be totally without merit. Rule 9(b), N.D.R.Civ.P., requires that the circumstances constituting fraud must be stated with particularity. The Davidsons' assert conclusions rather than facts, and therefore, do not meet the requirements of Rule 9(b), N.D.R.Civ.P. Likewise, the Davidsons' assert conclusions with regard to the claim of racketeering and do not allege facts that, if true, would support such a claim. However, after reviewing the record, we cannot conclude that the latter two issues are also devoid of merit.

■■■■ Both in their counterclaims and on appeal to this Court, the Davidsons assert that PCA breached a fiduciary duty.[10] We have not said that a fiduciary relationship could never exist under any circumstances between farmers and those who implement the Farm Credit Act. *See Federal Land Bank of St. Paul v. Asbridge*, 414 N.W.2d 596, 601 (N.D.1987), and *Federal Land Bank of St. Paul v. Lillehaugen*, 404 N.W.2d 452, 459 (N.D.1987). Whether or not a fiduciary relationship exists is a question of fact, and, therefore, the issue was not appropriate for summary judgment.

■■■■ The issue the Davidsons entitled "Contempt of Congress" appears to be based on the administrative forbearance policy mandated by the Farm Credit Act and found in 12 C.F.R. § 614.4510(d). The Davidsons assert PCA did not comply with these regulations. While the record contains nothing to support this assertion, PCA did not attempt to refute it in the brief or affidavit accompanying its motion for summary judgment. As this issue is an issue of fact and law, it was not an appropriate matter for summary judgment.

■■■■ PCA asserts in its appellate brief that this Court need not concern itself with the issues in the counterclaim as they are rendered moot by the Chapter 7 bankruptcy proceedings. However, upon questioning in oral argument, counsel for PCA acknowledged that, if the counterclaim stated a claim upon which relief could be granted, it was an asset to be considered part of the bankruptcy estate. If the bankruptcy trustee determined that he did not wish to pursue the counterclaim further, he could abandon it and the counterclaim would be

---

**9.** Rule 56(e), N.D.R.Civ.P., reads:

"*Form of Affidavits—Further Testimony—Defense Required.* Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

**10.** In the counterclaim and in oral argument, the Davidsons claim that PCA delayed issuing operating loans in the years 1982 and 1983 until later spring, resulting in a reduction in harvest yields. In their brief, the Davidsons do not mention the operating loan delays, but rather base the allegation of breach of duty on the fact that they were required to purchase stock in PCA prior to receiving a loan, and contend that PCA breached a fiduciary duty by failing to reveal the fact that "the true nature of the stock which they were required to purchase was actually a part of the cost associated with borrowing money."

We will not address the merits of the two issues the Davidsons raise on appeal involving section 28–29–04, N.D.C.C., the "confiscatory price defense" statute. The first time the Davidsons allege the "confiscatory price defense" is in their brief to this Court. Our review of the record does not disclose a single instance where this issue was presented to the trial court. As we said in *Lang v. Bank of North Dakota, supra*, 377 N.W.2d at 580 (N.D.1985), "this seriously belated effort to invoke judicial forbearance under Section 28–29–04, N.D.C.C., is not sufficiently worthy to outweigh the policy favoring finality of judgments in this case."

**348**

back in the hands of the Davidsons. Counsel for PCA admitted that this possibility resulted in the counterclaim issues being "not quite moot." We agree.

For the reasons stated herein, we affirm in part, reverse in part, and remand for proceedings not inconsistent with this opinion.

VANDE WALLE, MESCHKE and GIERKE, JJ., concur.

LEVINE, J., concurs in the result.