**PRODUCTION CREDIT ASSOCIATION OF FARGO, North Dakota, Plaintiff and Appellee,**

v.

**Allen E. ISTA and DeAnn M. Ista, Defendants and Appellants.**

**Civ. No. 890101.**

Supreme Court of North Dakota.

Jan. 25, 1990.

Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., Brad A. Sinclair (argued), Fargo, for plaintiff and appellee.

Craft, Thompson & Boechler, David C. Thompson (argued), Fargo, for defendants and appellants.

LEVINE, Justice.

Allen and DeAnn Ista appeal from a district court judgment granting Production Credit Association of Fargo ["PCA"] judgment in the amount of $508,507.71 and

dismissing the Istas' counterclaim. We affirm in part and reverse in part.

The Istas have farmed in Richland County for over thirty years. During most of that time they received financing from PCA and Federal Land Bank. In 1984 and 1985, the Istas sustained serious crop losses and experienced a negative cash flow, allegedly due to unusual flooding.

In January 1986, the Istas advised PCA that they would require $150,000 in operating funds for the 1986 season. PCA told the Istas that it would loan additional funds only if they restructured their debt. Several months of negotiations followed and on April 24, 1986, PCA formally advised the Istas that it was denying the loan. The Istas were able to assemble enough money to plant a crop but they did not purchase hail insurance. Hail caused extensive damage to the 1986 crop and the Istas again suffered considerable losses.

In July 1987, PCA commenced this action seeking a money judgment and foreclosure of its security interests in the Istas' equipment, grain on hand, crops, and deficiency and diversion payments. The Istas filed an answer and counterclaim, asserting that PCA had acted in bad faith and was negligent in servicing their loans, and challenging the validity of PCA's claimed security interest in crops grown after 1985.

PCA moved for dismissal of the Istas' counterclaim and for partial summary judgment on its complaint.[1] The trial court entered partial summary judgment dismissing the Istas' counterclaim and striking various defenses raised in their answer. The Istas subsequently abandoned their remaining defenses and the court entered judgment for PCA in the amount of $508,-507.71, granting foreclosure of PCA's security interests, and incorporating the provisions of the prior summary judgment. The Istas have appealed.

The following issues are dispositive on appeal:

I. Did PCA owe a fiduciary duty to the Istas?

II. Are the Istas entitled to recover in tort for PCA's alleged bad faith?

III. Did PCA have a duty to ensure that the Istas' 1986 crop was covered by hail insurance?

IV. Did PCA have a valid lien on the Istas' crops grown after 1985?

Summary judgment is a procedural device available for the prompt and expeditious disposition of controversies without trial when, after viewing the evidence in a light most favorable to the opposing party and giving that party the benefit of all favorable inferences, there is no genuine dispute as' to either the material facts or the inferences to be drawn from undisputed facts. *Hillesland v. Federal Land Bank Association of Grand Forks*, 407 N.W.2d 206, 210 (N.D.1987). Although the party seeking summary judgment has the burden of showing that there is no genuine issue of material fact, the party resisting the motion may not simply rely upon the pleadings but must present competent evidence by affidavit or other comparable means which raises an issue of material fact. *Eckmann v. Northwestern Federal Savings & Loan Association*, 436 N.W.2d 258, 260 (N.D.1989). Although factual disputes may exist, summary judgment is nevertheless appropriate where the law is such that resolution of the factual disputes will not change the result. *Russell v. Bank of Kirkwood Plaza*, 386 N.W.2d 892, 897 (N.D.1986).

## I. FIDUCIARY DUTY

The Istas assert that their status as shareholders in PCA creates a fiduciary relationship and that, consequently, PCA owed them a special duty in their loan transactions. Although the Istas have not pleaded a separate cause of action based upon breach of fiduciary duty, this asserted fiduciary relationship serves as an underly-

---

1. PCA originally sought dismissal of the counterclaim for failure to state a claim upon which relief can be granted. *See* Rule 12(b)(5), N.D.R. Civ.P. Because the parties presented matters outside the pleadings, the court properly treated the motion as one for summary judgment. *See Union State Bank v. Woell*, 434 N.W.2d 712, 715 (N.D.1989); *Eck v. City of Bismarck*, 283 N.W.2d 193, 196–197 (N.D.1979); Rule 12(b), N.D.R. Civ.P.

ing theme in their arguments on the various issues raised on appeal.

The Istas do not point to any evidence in the record which suggests that they were in a subservient position, that PCA exercised dominion and control over their farming operation, or that their relationship with PCA was different than PCA's relationship with its other borrowers. *See Union State Bank v. Woell*, 434 N.W.2d 712, 721–722 (N.D.1989). The Istas assert that the fiduciary relationship arises solely from their status as shareholders in PCA. Because all PCA borrowers are statutorily required to purchase stock in the association, *see* 12 U.S.C. 2094(f), the import of the Istas' argument is that PCA would, in every loan transaction, owe a fiduciary duty to the borrower.

■ The Istas have cited no authorities imposing such a broad-based fiduciary obligation on any farm credit entity, nor have we been able to find any support for their novel argument. Under federal common law, there is no fiduciary duty between a production credit association and farmers. *Boyster v. Roden*, 628 F.2d 1121, 1125 (8th Cir.1980). The question becomes whether state law establishes such a duty.

We have previously noted the possibility that a fiduciary relationship may exist between a farm borrower and a production credit association under appropriate circumstances. *See Production Credit Association of Grafton v. Davidson*, 444 N.W.2d 339, 347 (N.D.1989); *Federal Land Bank of St. Paul v. Asbridge*, 414 N.W.2d 596, 600–601 (N.D.1987); *Federal Land Bank of St. Paul v. Lillehaugen*, 404 N.W.2d 452, 459–460 (N.D.1987). Those cases do not, however, support the Istas' theory that PCA, as a matter of law, owes a fiduciary duty in loan transactions with each of its borrowers. Whether a fiduciary relationship exists is generally a question of fact, dependent upon a showing of special circumstances. *See Production Credit Association of Grafton v. Davidson, supra*, 444 N.W.2d at 347; *Kurth v. Van Horn*, 380 N.W.2d 693, 695–696 (Iowa 1986). Similarly, in those cases from other jurisdictions discussing fiduciary relation-

ships in the context of Farm Credit Act lenders, a showing of special circumstances demonstrating a departure from the ordinary lender-borrower relationship has been required. *See, e.g., Federal Land Bank of Spokane v. Stiles*, 700 F.Supp. 1060, 1066 (D.Mont.1988); *Kolb v. Naylor*, 658 F.Supp. 520, 526 (N.D.Iowa 1987); *Mantooth v. Federal Land Bank of Louisville*, 528 N.E.2d 1132, 1138–1139 (Ind.Ct.App. 1988); *Production Credit Association of Lancaster v. Croft*, 143 Wis.2d 746, 423 N.W.2d 544, 546–548 (Ct.App.1988).

■ We note that an officer or director of a corporation owes a fiduciary duty to the corporation and its stockholders. *See generally* 3 Fletcher, Corporations §§ 838, 848 (1986). This duty, however, extends only to the stockholders *collectively. See In re Black*, 787 F.2d 503, 506 (10th Cir.1986); *American General Insurance Co. v. Equitable General Corp.*, 493 F.Supp. 721, 740–741 (E.D.Va.1980); *Dawson v. Dawson*, 645 S.W.2d 120, 125 (Mo.Ct.App.1982); *Richardson v. Arizona Fuels Corp.*, 614 P.2d 636, 639 (Utah 1980). As noted in 3 Fletcher, Corporations, *supra*, § 838 at 178, "as a fiduciary in this sense, a director's first duty is to act in all things of trust wholly for the benefit of the corporation." *See also* Section 10–19.1–50, N.D.C.C. (a director shall act "in a manner the director reasonably believes to be in the best interests of the corporation"). The fiduciary obligations of a corporate director to stockholders does not extend to business transactions between the corporation and individual stockholders. *St. Louis Union Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 562 F.2d 1040, 1055 (8th Cir.1977), *cert. denied*, 435 U.S. 925, 98 S.Ct. 1490, 55 L.Ed.2d 519 (1978); 18B Am. Jur.2d, Corporations § 1692 (1985).

We decline to adopt the Istas' novel proposition that PCA, in all of its loan transactions, owes a fiduciary duty to its borrowers arising solely out of their status as stockholders in PCA.

## II. BAD FAITH

The Istas assert that the trial court erred in granting summary judgment dismissing

their tort claim based upon PCA's alleged bad faith.

Much of the Istas' argument on this issue is premised upon their assertion that PCA accelerated their debt in bad faith. The Istas rely upon Section 41–01–18, N.D. C.C. [U.C.C. § 1–208], which provides:

> "*Option to accelerate at will.* A term providing that one party or his successor in interest may accelerate payment or performance or require collateral or additional collateral 'at will' or 'when he deems himself insecure' or in words of similar import shall be construed to mean that he shall have power to do so only if he in good faith believes that the prospect of payment or performance is impaired. The burden of establishing lack of good faith is on the party against whom the power has been exercised."

■ A review of the record on appeal, however, demonstrates that no acceleration occurred. A "Supplementary Loan Agreement," executed by the Istas on April 22, 1985, provides that their entire loan balance became due on March 1, 1986, unless the parties prior to that date agreed in writing to other repayment terms. The Istas do not challenge the validity of that agreement.

"Acceleration" requires a change in the date of maturity from the future to the present. *General Motors Acceptance Corp. v. Uresti,* 553 S.W.2d 660, 663 (Tex. Civ.App.1977); *see also Grubbs v. Houston First American Savings Association,* 718 F.2d 694, 697 n. 2 (5th Cir.1983); *In re Williams,* 11 B.R. 504, 506 (Bankr.S.D.Tex. 1981). The Istas' entire debt became due on March 1, 1986, through the terms of the 1985 agreement. Because there was no change in the date of maturity from the future to the present, no acceleration occurred. Therefore, Section 41–01–18, N.D. C.C., is inapplicable.

The Istas also urge that a tort action for bad faith may be premised upon Section 41–01–13, N.D.C.C. [U.C.C. § 1–203], which provides that "[e]very contract or duty within this title imposes an obligation of good faith in its performance or enforcement." In *Union State Bank v. Woell, supra,* 434 N.W.2d at 715–716, we stated that "[w]e have not ruled whether a tort action exists in this jurisdiction for breach of the obligation of good faith in a commercial context." *See also First National Bank & Trust of Williston v. Ashton,* 436 N.W.2d 215, 221 (N.D.1989). In *Woell,* we found it unnecessary to resolve the issue, holding that, even if such a tort were recognized, summary judgment dismissing the action was nevertheless proper under the circumstances. *Union State Bank v. Woell, supra,* 434 N.W.2d at 715–716.

The same situation is presented in this case. We need not determine whether such a tort action will be recognized in commercial cases generally because, assuming that it is, summary judgment dismissing the Istas' action was appropriate under the circumstances presented in this case.[2]

■ Essentially, the only evidence of bad faith relied upon by the Istas to support their tort theory is their assertion that PCA failed to consider the Istas for administrative forbearance under applicable federal regulations before denying their request for an operating loan in 1986.[3] The Istas

---

**2.** Numerous commentators have discussed the extension of tort theories of recovery into traditional commercial contexts in the form of actions for bad faith. *See, e.g.,* Bahls, *Termination of Credit for the Farm or Ranch: Theories of Lender Liability,* 48 Mont.L.Rev. 213 (1987); Note, *Lender Liability: Breach of Good Faith in Lending and Related Theories,* 64 N.D.L.Rev. 273 (1988); Note, *Extending the Bad Faith Tort Doctrine to General Commercial Contracts,* 65 B.U. L.Rev. 355 (1985); Note, *"Contort": Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing in Noninsurance, Commercial Contracts,* 60 Notre Dame L.Rev. 510 (1985).

**3.** We note that the parties dispute whether administrative forbearance alternatives were considered prior to denial of the loan request. The Istas assert that they were told they would receive an operating loan for 1986 only if they agreed to liquidate their farming operation at the end of the 1986 growing season. PCA asserts that it considered and discussed with the Istas numerous options for restructuring their debt. Because this case comes to us on summary judgment, we must view the evidence in the light most favorable to the Istas. *See Hillesland v. Federal Land Bank Association of Grand Forks, supra,* 407 N.W.2d at 210.

rely upon the federal regulation in effect at that time requiring PCA to adopt a policy providing for administrative forbearance in appropriate cases. *See* 12 C.F.R. § 614.4510(d)(1) (1986); *Federal Land Bank of St. Paul v. Overboe*, 404 N.W.2d 445, 447 (N.D.1987). They assert that PCA's failure to consider administrative forbearance alternatives before denying the request for a 1986 operating loan evidences bad faith.

In *Federal Land Bank of St. Paul v. Overboe, supra*, 404 N.W.2d at 448, we noted that the federal courts have concluded that borrowers do not have a private cause of action for damages or injunctive relief under the 1971 Farm Credit Act and accompanying regulations, including the administrative forbearance regulation relied upon by the Istas in this case.[4] *See, e.g., Mendel v. Production Credit Association of the Midlands*, 862 F.2d 180, 182 (8th Cir.1988); *Bowling v. Block*, 785 F.2d 556, 557 (6th Cir.), *cert. denied*, 479 U.S. 829, 107 S.Ct. 112, 93 L.Ed.2d 60 (1986); *Smith v. Russellville Production Credit Association*, 777 F.2d 1544, 1548 (11th Cir. 1985).

The Istas assert that, notwithstanding the absence of an implied private right of action under federal law, violation of the federal regulations may give rise to a separate cause of action under state tort law. The Istas cite no relevant authority in support of their contention that violation of the

administrative forbearance regulation gives rise to a state tort action, and it appears that the few courts which have addressed the issue have rejected it.

Illustrative is *Production Credit Association of Worthington v. Van Iperen*, 396 N.W.2d 35 (Minn.Ct.App.1986). Van Iperen asserted that the PCA's failure to consider forbearance or give notice of denial of credit or right of appeal violated the federal regulations and gave rise to a tort claim under state law. The court concluded that the regulations imposed no duty or obligation upon PCA which could give rise to a tort:

"We conclude as controlling the interpretation stated in *Smith v. Russellville Production Credit Association*, 777 F.2d 1544 (11th Cir.1985). That court stated:

"'[T]he 'means of forbearance' regulation in the present case is not a substantive rule but, rather, is a general statement of agency policy. The regulation states that, when banks and associations develop their loan servicing policies and procedures, '*the policy shall provide a means of forbearance*' for borrowers meeting certain criteria. 12 C.F.R. § 614.4510(d)(1) (emphasis added). Although the term 'shall' indicates the mandatory nature of this policy, *the regulation is nevertheless directed at agency policy, and is not a substantive rule.* Accordingly, we

---

4. The United States Court of Appeals for the Eighth Circuit has recently held that a borrower may have a private cause of action for injunctive relief under the Agricultural Credit Act of 1987. *Zajac v. Federal Land Bank of St. Paul*, 887 F.2d 844 (8th Cir.1989) (vacated and rehearing en banc granted Dec. 7, 1989). The 1987 Act amends the statutory provisions governing the Farm Credit System, and appears to greatly expand the rights of Farm Credit System borrowers. The court emphasized the legislative history of the 1987 Act to distinguish its prior cases holding that no private right of action existed under the 1971 Farm Credit Act or the 1985 amendments. *See Mendel v. Production Credit Association of the Midlands*, 862 F.2d 180 (8th Cir.1988); *Redd v. Federal Land Bank of St. Louis*, 851 F.2d 219 (8th Cir.1988). The court also stressed that its ruling extended only to actions for injunctive relief, and specifically noted that its holding did not imply that an action

for monetary damages would be available. *Zajac v. Federal Land Bank of St. Paul, supra*, 887 F.2d at 857 n. 16.

The only other federal appellate court presented with the issue has held that the 1987 Act does not create a private right of action on behalf of borrowers. *See Harper v. Federal Land Bank of Spokane*, 878 F.2d 1172, 1175 (9th Cir.1989), *petition for cert. filed*, 58 U.S.L.W. 3387 (Nov. 22, 1989).

The Istas have not asserted any violation of the 1987 Act. In fact, it is undisputed that after enactment of the 1987 Act, PCA ceased prosecution of this action and allowed the Istas a period of several months to seek forbearance relief under the 1987 Act. The Istas never requested such relief. Thus, the Istas rely solely upon alleged violations of the 1971 Act and 1985 amendments to support their bad faith tort action.

hold that 12 C.F.R. § 614.4510(d)(1) does not have the force and effect of law, and does not provide the basis for an implied private right of action on behalf of borrowers * * *.

"*Id.* at 1548 (emphasis added).

"That language speaks toward the entire act. To establish a state private cause of action here, respondent would have to owe appellants a duty or obligation based on agency policy. Given the nonsubstantive nature of the Farm Credit Act, we decline to impose such dutiful or obligatory compliance." *Production Credit Association of Worthington v. Van Iperen, supra,* 396 N.W.2d at 38.

*See also Bevier v. Production Credit Association of Southeast Minnesota,* 429 N.W.2d 287, 288–289 (Minn.Ct.App.1988); *Ebenhoh v. Production Credit Association of Southeast Minnesota,* 426 N.W.2d 490, 493 (Minn.Ct.App.1988).

The United States Court of Appeals for the Eighth Circuit reached a similar result in *Mendel v. Production Credit Association of the Midlands,* 862 F.2d 180 (8th Cir.1988). The court, applying South Dakota law, held that the 1971 Farm Credit Act, the 1985 amendments, and the accompanying regulations do not impose duties upon production credit associations the breach of which would give rise to a state law tort action. *Mendel v. Production Credit Association of the Midlands, supra,* 862 F.2d at 183–184. *See also Yankton Production Credit Association v. Jensen,* 416 N.W.2d 860, 863 (S.D.1987); *Federal Land Bank of Omaha v. Jensen,* 415 N.W.2d 155, 158–159 (S.D.1987).

We were presented with a similar issue in *Hillesland v. Federal Land Bank Association of Grand Forks,* 407 N.W.2d 206 (N.D.1987). In *Hillesland,* we held that there was no private right of action for wrongful discharge under the 1971 Farm Credit Act on behalf of Farm Credit System employees. We also rejected Hillesland's claim that violation of the 1971 Farm Credit Act could provide the basis for a common law wrongful discharge action under state tort law:

"Hillesland also contends that the standards set out in the Farm Credit Act may form the basis for a common law wrongful discharge action under state law. Opposing counsel contends that this court has never formally recognized a common law wrongful discharge action sounding in tort and alleges that the federal statute, which does not give rise to an implied cause of action as a matter of federal law, should not be the basis for the creation of a new tort under state law.

"In *R.B.J. Apartments, Inc. v. Gate City Savings & Loan Association,* 315 N.W.2d 284, 290 (N.D.1982), we held that violation of the National Flood Insurance Act did not give rise to a common law negligence action under state law:

" 'The question of whether or not a common-law right of action exists for the violation of a federal statute is a matter of state law.... We are not able to find a state cause of action in this instance. The separation-of-powers doctrine and principles of federalism militate against the adoption of the federal statute as the standard of care in a state negligence action when no private cause of action, either explicit or implicit, exists in the federal statute.' [Citation omitted.]

"We conclude that under the facts of this case it would be inappropriate to provide a common law wrongful discharge action for violation of the Farm Credit Act provisions and regulations relied upon by Hillesland." *Hillesland v. Federal Land Bank Association of Grand Forks, supra,* 407 N.W.2d at 210 n. 1.

Based upon the foregoing authorities, we conclude that a bad faith tort action for damages under state law may not be based upon a violation of the 1971 Farm Credit Act or its accompanying regulations. If there can be no claim for damages for bad faith based upon a violation of the 1971 Farm Credit Act, such violation cannot serve as evidence of bad faith. In so holding, we recognize the familiar maxim that "the law does not permit by indirection

what cannot be accomplished directly." *E.g., Langenes v. Bullinger,* 328 N.W.2d 241, 246 (N.D.1982).

We are also mindful of our holding in *Federal Land Bank of St. Paul v. Overboe, supra,* that failure to consider a borrower for administrative forbearance under the applicable regulations may constitute an equitable defense to a foreclosure action. Our holding in *Overboe* was premised largely upon the equitable nature of a foreclosure action and the recognition that guidelines or policies setting forth equitable standards of conduct may give rise to an equitable defense where those same guidelines or policies would not provide the basis for an independent cause of action. *Federal Land Bank of St. Paul v. Overboe, supra,* 404 N.W.2d at 448–449. There is a vast difference between allowing use of a regulatory violation as a "shield," in the form of an equitable defense to foreclosure, and allowing its use as a "sword" to create a state-based tort action for recovery of damages where no direct private right of action for damages is recognized.

█ We conclude that the trial court did not err in dismissing the Istas' claim for tort damages based upon bad faith.[5]

## III. NEGLIGENT SERVICE OF LOAN

The Istas assert that PCA was negligent in servicing the loan because PCA did not ensure that the Istas had obtained hail insurance on the 1986 crop.

The Istas' loan balance became due on March 1, 1986. PCA made the determination that it would not advance operating funds for 1986, and the Istas personally raised the money to plant their 1986 crop.

They concededly never requested that PCA provide hail insurance or advance funds for hail insurance. The trial court concluded that PCA had no duty to furnish or finance hail insurance on the 1986 crop.

█ As a prerequisite to actionable negligence, a plaintiff must establish the existence of a duty on the part of the allegedly negligent person to protect the plaintiff from injury. *Barsness v. General Diesel & Equipment Co.,* 383 N.W.2d 840, 843 (N.D.1986). Whether such a duty exists is generally a preliminary question of law for the court. *Barsness v. General Diesel & Equipment Co., supra,* 383 N.W.2d at 843.

█ We find the Istas' argument on this issue to be wholly without merit. On the record presented, the trial court did not err in concluding that, as a matter of law, PCA had no duty to furnish or finance hail insurance on the 1986 crop.

## IV. CROP LIENS

The Istas assert that the trial court erred in holding that PCA had a valid security interest in crops grown in 1986, 1987, and 1988.

On April 22, 1985, the Istas received their 1985 operating loan and executed a security agreement to PCA covering "[a]ll crops growing or to be grown" by the Istas on certain described real estate. The trial court rejected the Istas' assertion that the parties had intended to provide a lien only upon the 1985 crop. The court held that the security agreement was valid as to crops grown by the Istas in 1986, 1987, and 1988, and granted foreclosure of that security interest.[6]

---

5. Although not specifically raised by the Istas, we note that there can be no bad faith inferred from a lender's refusal to extend further credit when it is under no contractual or statutory duty to do so. *See Union State Bank v. Woell,* 434 N.W.2d 712, 717 (N.D.1989). The Istas have not provided any evidence to show that PCA had a contractual or statutory duty to continue financing their farming operation.

6. The 1985 Legislature enacted Section 35–05–01.1, N.D.C.C., which restricts the application of a crop lien to the current year's crop. Section 35–05–01.1 took effect on July 1, 1985, after the

Istas executed the security agreement at issue here. The Istas do not argue that the law in effect when they executed the security agreement on April 22, 1985, prohibited a continuing crop lien, nor do they argue that Section 35–05–01.1 should or could be given retroactive effect.

The Istas do assert, however, that PCA had a duty to advise the Istas of the imminent change in the law, and that, having failed to advise the Istas, PCA is estopped from enforcing a continuing crop lien. The Istas' argument is premised upon their assertion that PCA owed them a fiduciary duty as shareholders. Because we

The Istas assert on appeal that the parties, through a long-standing course of dealing, intended that the security agreement executed on April 22, 1985, was to cover only the 1985 crop. In response to PCA's motion for summary judgment, Allen Ista submitted an affidavit stating that for over thirty years PCA had annually made operating loans to the Istas for each crop year, and had required the Istas to sign a new security agreement covering crops in conjunction with each year's operating loan. Allen Ista's affidavit also states that it was mutually agreed, and the parties understood, that each year's security agreement covering crops applied only to the "crop raised during the growing season for which a particular operating loan was made." On summary judgment, this evidence must be viewed in the light most favorable to the Istas and they are to receive the benefit of all favorable inferences. *Hillesland v. Federal Land Bank of Grand Forks*, 407 N.W.2d 206, 210 (N.D. 1987). Thus, we must accept the affidavit as true when determining whether summary judgment was appropriate.

PCA asserts that its security agreement is clear and unambiguous on its face, precluding consideration of course of dealing.[7] We have recently noted, however, that the surrounding circumstances must always be considered when interpreting contract language:

" 'It is axiomatic that the surrounding circumstances from which a contract stems are to be considered when interpreting its provisions.' *Delzer Constr. Co. v. New Marian Homes Corp.*, 117 N.W.2d 851, 856 (N.D.1962). 'It is sometimes said that extrinsic evidence cannot change the plain meaning of a writing, but meaning can almost never be plain except in a context.' Restatement (Sec-

ond) of Contracts § 212 comment b (1981)." *Matter of Jawaski*, 446 N.W.2d 258, 260 (N.D.1989).

Thus, parol evidence of course of dealing is admissible, because an intelligent interpretation of the agreement requires that the court familiarize itself with the commercial setting. *See Dawn Enterprises v. Luna*, 399 N.W.2d 303, 306 n. 3 (N.D.1987); *Peoples Bank and Trust v. Reiff*, 256 N.W.2d 336, 341 (N.D.1977). If the terms of the contract are ambiguous after considering evidence of course of dealing, the court is to consider all relevant extrinsic evidence to determine the true intent of the parties. *Dawn Enterprises v. Luna, supra*, 399 N.W.2d at 306 n. 3. An ambiguity exists when rational arguments can be made in support of contrary positions as to the meaning of a term, phrase, or clause of a contract. *Barsness v. General Diesel & Equipment Co.*, 422 N.W.2d 819, 824–825 (N.D.1988).

After taking into consideration the evidence of course of dealing and reviewing the security agreement in its commercial context, we conclude that the language "[a]ll crops growing or to be grown" is susceptible of differing reasonable interpretations and thus is ambiguous. Although the language of the security agreement can be read as an indication of intent to create a continuing crop lien beyond the 1985 crop year, the fact that the parties executed a new security agreement each year contemporaneously with receipt of the operating loan for that year's crop is a strong indication that the parties intended the security agreement to cover only that crop. Accordingly, there are two reasonable interpretations of the contract language. . The resultant ambiguity raises a

have held that the Istas failed to establish a fiduciary relationship, we find it unnecessary to address this assertion.

7. PCA asserts that we have declared that PCA's standard form loan documents are clear and unambiguous in *Production Credit Association of Fargo v. Foss*, 391 N.W.2d 622 (N.D.1986). In response to the Fosses' assertion that PCA's Basic Loan Agreement and Supplementary Loan Agreements lacked a definite and certain repay-

ment schedule, we held that, read together, the agreements in that case clearly and unambiguously set out a definite repayment schedule. *Production Credit Association of Fargo v. Foss, supra*, 391 N.W.2d at 625–626. Our holding in that case was not a blanket approval of all provisions in PCA's loan forms, and certainly does not preclude a finding of ambiguity in other provisions of those documents in a case involving different parties.

material issue of fact, and therefore summary judgment on the issue of the duration of the security interest was inappropriate.

 PCA correctly points out that a party may not use course of dealing to contradict express provisions of the written agreement. Section 41–01–15(4), N.D.C.C. [U.C.C. § 1–205(4)], provides:

> "The express terms of an agreement and an applicable course of dealing or usage of trade shall be construed wherever reasonable as consistent with each other; but when such construction is unreasonable express terms control both course of dealing and usage of trade and course of dealing controls usage of trade."

Thus, parol evidence of a course of dealing may not be used to directly contradict unambiguous terms of the written contract. *Thiele v. Security State Bank of New Salem*, 396 N.W.2d 295, 301 (N.D.1986); *Peoples Bank and Trust v. Reiff, supra*, 256 N.W.2d at 341.

Course of dealing is not being used in this case to directly contradict express, unambiguous terms of the written agreement. It is possible to reasonably construe the express language of the contract, "crops growing or to be grown," as consistent with the alleged course of dealing suggesting that each security agreement applied only to that year's crop. The course of dealing may indicate that the parties, by the language "crops growing or to be grown," intended only those crops "to be grown" during that crop year. The evidence of the parties' prior conduct is used here to "give particular meaning to and supplement or qualify terms of an agreement." Section 41–01–15(3), N.D.C.C.; *see Peoples Bank and Trust v. Reiff, supra*, 256 N.W.2d at 341.

We conclude that the trial court erred in granting summary judgment foreclosing PCA's alleged security interest in the Istas' 1986, 1987, and 1988 crops. We reverse that part of the judgment foreclosing those alleged security interests and remand for further proceedings in accordance with this opinion.

The judgment is, in all other respects, affirmed. Each party shall bear its own costs on appeal.

ERICKSTAD, C.J., and MESCHKE and VANDE WALLE, JJ., concur.

GIERKE, J., deemed himself disqualified subsequent to oral argument and did not participate in this decision.